Argued October 11, reversed and remanded November 1, 1961

## STUTZ et ux v. AMMER
## LUCH v. AMMER

365 P. 2d 874

*Wm. W. McGeorge* and *Warde H. Erwin,* Portland, argued the cause and filed a brief for appellants.

*Leo Levenson,* Portland, argued the cause for respondent. With him on the brief was Larry Landgraver, Portland.

Before McALLISTER, Chief Justice, and ROSSMAN, PERRY, GOODWIN and LUSK, Justices.

PER CURIAM.

Two cases, involving substantially identical ques-

tions of law and fact, are consolidated in this appeal from two contemporaneous decrees which denied rescission and restitution to the victims of the fraudulent sale of a business.

The trial court found as a fact that the plaintiffs were the victims of fraud sufficient to justify rescission if the plaintiffs could restore the *status quo ante* the contract. The trial court then denied relief for the reason that perfect restoration of the business to the fraudulent vendor had become impossible.

Since the record fully justifies the trial court's finding that there was fraud, it is not necessary to burden the reports with a detailed history of the scheme by which the plaintiffs and their respective money and property were parted. A brief factual statement will, however, show that the impossibility of returning a thriving business to the defendant was the fault, not of the plaintiffs, but of the defendant. Therefore, the trial court erroneously applied the general rule which ordinarily conditions rescission of a contract on a return of the consideration received thereunder.

The victims discovered the fraud two days after the sale. The business which they had purchased was then insolvent. It was shortly thrown into bankruptcy by its creditors.

While the fact is not particularly significant in this case, the business was organized as an Oregon corporation. The purchasers bought the stock of the corporation for valuable consideration. Before the defendant transferred the stock certificates, the defendant and a confederate depleted the corporate cash. We do not necessarily impute criminal conduct, but merely state the fact that the corporation was thus left without funds with which to pay its outstanding bills.

Without more, this substantial and unauthorized change in the financial condition of the corporation upon which the purchasers had relied would have justified rescission. There was other fraud as well.

The defendant now resists rescission by asserting that when he sold the business it was a going concern but when it was tendered back to him two days later it was on the verge of bankruptcy. It is true that when sold the concern was going, but it was going to the wall. The seller's argument might deserve attention if the insolvency had been caused or accelerated by the plaintiffs. On the facts before us, however, the purchasers were without fault except gullibility. Figuratively speaking, they had bought a vessel which was in the process of being scuttled by its former master. It took a few days to sink. The flaws were well concealed. The seller now says rescission may not be decreed because the sunken vessel could not be restored to him in the condition it was in before the seller opened the cocks. We know of no such rule. On the contrary, the principles applicable to this case are fully set forth in *Jones v. McGinn,* 70 Or 236, 140 P 994. We need not repeat them here. The shares of stocks were tendered back to the seller. That was a sufficient restoration of the consideration on the facts of this case. The plaintiffs had no duty to keep the doomed business afloat. To have attempted to do so might have prejudiced their right to rescind. See *Amort v. Tupper,* 204 Or 279, 282 P2d 660.

The decree must be reversed with directions to enter a decree of rescission. To the extent that the plaintiffs received cash or other property in the transaction, it must of course be returned.

Reversed and remanded.